## THE COMMERCE.

1. A steamer condemned for not changing her course when meeting a sailing vessel.
2. When the District and Circuit Courts in such a decree ag·ee in their estimate of the value of the sailing vessel, this court will not set aside their estimate without satisfactory evidence that they were mistaken.

APPEAL from the Circuit Court for the District of Maryland.

The steamer Commerce was proceeding down the Chesapeake Bay, in a southeast course, on an evening of January, 1870; the schooner Seamen trying to sail up in a course about north-northwest. The night was perfectly calm, and the moon was shining. When nearly opposite Annapolis, the vessels first saw each other, at a distance of about two miles, and not a great·while afterwards collided; the steamer cutting the schooner in two, and sending her with her cargo forthwith to the bottom in the deepest part of the bay. Her owners hereupon libelled the steamer in the District Court at Baltimore. The master of the steamer answered, stating that she was proceeding down the bay at a rate of six or seven miles an hour, holding a course south by west; that he discovered a sailing vessel approaching from the opposite direction, holding a course, as near as he could judge, north by east; that a light wind was prevailing from the southeast, of about two knots an hour; that when the schooner was about a mile distant, he altered the course of the steamer to south by east; that he continued this last-mentioned course, and the schooner continued her original course until the vessels were within about four hundred yards of each other, when the schooner changed her course so as to cross the bow of the steamer; that he then caused the engines of the steamer to be stopped and reversed; that if the schooner had not altered her course the collision would not have taken place, &c.

The captain of the schooner testified that the schooner was becalmed, " her sails amidship and swinging inboard,"

and could not change her course nor get out of the way; and that the steamer was warned when yet half a mile off that unless she changed *hers*, she would certainly " be into the schooner."

The pilot of the schooner confirmed this account of things, stating that the schooner was actually going back rather than forwards, drifting with an ebb tide; that the bay was so calm that the schooner would not answer her helm at all, and had to be kept straight with an oar.

A more credible witness than either of these persons—who it will have been observed were both from the schooner, and who were to some extent contradicted by the master of the steamer, who testified that " a light wind was prevailing from the southeast of about two knots an hour "—was one Thurlow, who happened to be on a sloop lying off Annapolis, and between the two vessels and the shore when the collision took place; and had been watching both the probabilities and the fact of the disaster. " I was," said this witness, " two or three hundred yards westward of these vessels when the collision took place. I saw the two boats about five minutes before the collision and up to the time of the collision. I heard the captain of the schooner holloa to the steamer to keep away from him. I think that the steamer did not slacken her speed, nor change her course. The schooner did not change hers. She was keeping her proper course up the bay. There was not a particle of wind at the time that I could judge ; not a ripple upon the water. You could see a vessel about a mile off, and her lights about a mile and a half."

The District Court condemned the steamer, and put the value of the schooner at $2500. She had cost the libellants $2000 some years before, but they had laid out some money in repairing her, and witnesses swore that she was now well worth $2500, and even more. The Circuit Court on appeal affirmed the decree of the District Court.

*Mr. William Shepard Bryan, for the appellant*, argued :

1st. That no reliance was to be given to the testimony of

the master and pilot of the schooner, who would, of course, whatever they had done or omitted to do, exculpate themselves; and,

2d. That if the steamer was properly condemned, the award of damages in favor of the schooner for more than her whole cost several years before, was plainly erroneous.

*Mr. W. S. Waters, contra.*

Mr. Justice STRONG delivered the opinion of the court.

If the schooner was guilty of any fault which caused the collision, or contributed to it in any degree, it was in a change of her course, which the respondents allege she made when the vessels were about four hundred yards from each other. No other fault was averred in the answer to the libel, and no other has been suggested in the argument here. But the evidence utterly fails to establish the allegation of any change of the course of the schooner after the steamer hove in sight, or after she was seen from the steamer. Not only is there the direct evidence to the contrary of the master and pilot of the schooner, as well as of a disinterested witness who saw the collision from a yacht two or three hundred yards westward from the place where it happened, but it is made abundantly manifest that a change of course was then impossible. There was a dead calm, with not a ripple upon the water, and the sails of the schooner were amidships, swinging inboard. She was drifting with an ebb tide, and could be kept straight only by an oar. Such is the overwhelming testimony. And nothing appears on the other side except the statement of the master of the steamer, who has testified that " the wind was about southeast, and, as near as he could judge, about a two-knot breeze." As the steamer was on a southeast course, and making six or seven knots, this testimony is very light evidence in the scale against the proofs that the schooner was becalmed, and consequently that the averment of a change of her course is without foundation. The case exhibits nothing, then, to justify the steamer's failure to keep out of the way, and she was properly condemned.

It is said, however, she has been mulcted in excessive damages. The District Court and the Circuit Court concurred in the assessment made, and we do not perceive that more was allowed to the libellants than the evidence warranted. When both the lower courts have agreed in their estimate of the damages, we ought not to set aside their conclusions without satisfactory evidence that they were mistaken. We have no such evidence before us.

DECREE AFFIRMED.